191084 Darlan Eleazar, Enamorado-Rodriguez v. Williams v. Barr May I reserve two minutes for rebuttal? You may. Thank you. We contend that this court should vacate the order issued by the Board of Immigration Appeals. I would like to begin first by addressing the Board's nexus holding. With respect to nexus, Darlan testified that he was abused because of his membership in his mother's family, and the government neither contested nor even cross-examined him on this point. Nevertheless, the government, like the Board, says this was insufficient because Darlan did not provide corroborating evidence and no mixed motive analysis was required. You know, it's not so clear to me that's what the I.J. was saying, but that's the way the B.I.A. characterized what the I.J. was saying. So do we take what the B.I.A. says as the final word? Yes, Your Honor. I think in this case where the Board made its own findings and didn't just rely on what the immigration judge had held, that this court should review the Board's decision in that regard. Counsel, even if we were to find that the B.I.A., the I.J. in its decision did not get it right on this issue of past persecution, that the abuse of your client was triggered by his relationship to his mother's family, and so the past persecution case was made, how does that help you at all in terms of the ultimate relief that you're seeking here? Because that would give you a rebuttable presumption of future persecution. But what is the nature of the future persecution that would be at issue here? So first off, I don't think the record shows where his grandmother is located. I think the record shows that his grandfather is in Mexico, but it's a little bit unclear where his grandmother is located. But more importantly, you are correct that if the court finds on past persecution, that would give our client a rebuttable presumption of future persecution. The government had not presented any evidence to rebut that presumption below. I'm not sure that they should get a second chance to do that here. I think their chance to do that was before the immigration judge. But why isn't his adulthood sufficient inference that he can take care of himself when he's not subject to abuse? So I think there are a couple of things. One, the government raises that argument in their opposition brief and then again on their 28-J letter. And I think our client's age did not factor into the agency's decision here, so I'm not sure that this court can consider it for the first time on this appeal. I think this court has to rest its decision on the basis for the agency's decision below, so I'm not sure that our client's age is appropriate for consideration here on this appeal. So let's go back. I'm a little unclear about the relief you're asking for. Let's assume that the BIA decision contains an error of law about mixed motive type cases and let's assume it contains an error of law as to corroborative evidence. I had understood you therefore would seek a remand where they have to properly apply that and in your view that would result in a past persecution finding which would raise the presumption. Nobody got that far before the agency in this case. You now seem to be suggesting that agency to find on this record that the nexus had been established. That's more than I thought you were arguing for in your brief. And secondly, you're asking I think in response to Judge Lopez that we preclude the government from addressing the issue of the rebuttable presumption. I had thought based on your brief that you were asking for a remand so the law could be properly applied and if the rebuttable presumption was found that then you would make your arguments and the government would make their arguments. But you're now suggesting that the government be able to make their arguments. So what is it you're asking for? Yeah, so I think, Your Honor, we are asking for relief similar to what the court granted in Ivanov v. Holder and so what we would suggest is that there's sufficient evidence on the record for this court to find that our client established a nexus and that the decision below is not supported by substantial evidence and that the nexus was established. No, no, no, wait a minute. There are two different things. In order to make that nexus finding, wouldn't we have to find that the evidence compelled a nexus finding? That's correct. At times in your brief, you seem to be asking us to actually order the asylum be granted. That would be extraordinary. I mean, I don't ever remember doing that. What would be the basis for doing that? I think what we're asking is for the court to issue an opinion saying that our client has met the statutory requirements for asylum and then it would be up to the agency at its discretion to grant asylum. But if the court finds in our favor on the nexus point, then that would establish past persecution. No, no, no, no. There's another step, which is it gets remanded to do a proper analysis and the chips fall where they may. But I don't, I think he's got a strong case on nexus, but it's hard to say that the evidence compels a nexus finding, much less that it then eliminates any need to inquire about future persecution. Your Honor, I think we would argue that the record compels that finding. However, if the court, if the court believes, as you've stated, that the matter should be remanded to the agency to conduct that analysis, I think we would also, that really could also... Okay, I want to ask about the collaborative evidence. The BIA suggests that the sister should have been called. Sister wouldn't seem to know very much since she was raised separately and not present when the grandparents beat and abandoned and abused your client. But on the mother, okay, so she puts in an affidavit that in part corroborates your client's story, or at least is consistent with, one might view that as corroborative evidence. The IJ discounts it because she puts in an affidavit and she comes to the court, to the IJ's courtroom, but she doesn't testify. And we have counsel for your client saying, I can't force her to testify. She doesn't want to testify. The government doesn't ask that she be put on the stand. And the government makes no suggestion that her testimony should be discarded because she doesn't take the witness stand, or at least not at that time. So I've been trying to figure out why she would refuse to get on the witness stand. Was she afraid that if she testified, she would be picked up by an ICE agent and booted from this country? Is that what's going on? Is that the underlying story? Thank you, Your Honor. The record doesn't make that point clear. That is my understanding. However, that is not reflected in the record. So I know we have in this courthouse, in the district court, a suit saying that ICE does that in the state courts. Does any of the evidence in that case say ICE does that at hearings before immigration judges? Do you know? I don't know standing here today. But I think the bottom line, I think, from our client's perspective is his mother refused to testify. She wasn't willing to testify. And so he was not wanting to try to force her to testify. And I think there's another point here, and I think you made this. It was used adversely against him, and that's why we're trying to figure out what's going on. Correct. And I think the immigration judge and the board did not necessarily conduct the proper analysis as to whether her testimony was necessary, whether it was reasonable for her to testify, and whether her failure to testify was adequately explained. So I think there's a legal error there as well, that her refusal to testify was not adequately explained by our client, which is required. But in terms of her reasons as to why she did not want to testify, that point is not made clear on the record, however. But is there a case that says if you show up for the hearing and you're asked to testify, that you can't make an adverse inference from that? I'm sorry, could you? Is there a case that supports that proposition that it was legal error to make that adverse inference? Legal error not to make the adverse inference? I'm sorry, legal error to make the adverse inference. Yes. So I think the cases we cite in our brief, they don't talk specifically to that point, but they do discuss when you have an applicant like our client who testifies credibly, whose testimony is unrebutted, and then what you're dealing with here in terms of the subject matter of the testimony goes to the persecutor's motive in terms of what she would have corroborated. Based on the cases from this circuit, that's in many ways the weakest case for an adverse inference against an asylum applicant. But she was a collaborator. She was present, and her collaboration could have been subjected to cross-examination had she testified. That's correct. However, in terms of what she was going to corroborate, and the government actually makes this point in their own brief, his mother primarily spoke to abuse perpetrated by our client's father, not by the grandparents, and so it's unclear that she would have added much of anything to his underlying story. Counselor, I'd like to pose another question to you. This is on the future persecution question. Would it be an appropriate way for us to analyze this case as follows? Suppose we were to conclude that you've made a good case, that there were legal errors made in the way that the past persecution issue was handled, then creating this rebuttable presumption about future persecution. But we go on then to look at the legal arguments you make about the various forms of persecution, future persecution issue. These are the different social groups that you put forth, and we were to conclude that legally they just don't work, so that in essence, given the failure to make a plausible claim on future persecution, there's just no point to send it back in light of these mistakes that were made on past persecution. Would that be an appropriate way for us to proceed? Would that not be the right way to proceed? Your Honor, I don't believe that would be the correct way to proceed for several reasons. First, the immigration judge here actually found that our client had established both a subjective and objective fear of future persecution. What the immigration judge did not do was connect that fear of future persecution to a protected social group. They addressed those future persecution claims, did they not? The IJM, the BIA, and rejected them. So the future persecution claim was addressed in the context of mislabeling our client as a gang member, and that was the context in which the future persecution claim was addressed in that context. And there, what the board said was that our client would only be subject to lawful monitoring, not persecution, which was not a fact found by the immigration judge, so I'm not sure that it's something that the board itself could have found in the first instance. However, with respect to the PSG of his mother's family, the immigration judge did not conduct a future persecution analysis with respect to that specific PSG. There was only a general statement in the opinion that he had a subjective and objective fear of future persecution if deported to Honduras. Thank you. I'm a little confused now. I thought as to the family issue, there was no analysis whatsoever as to future persecution. That there was a reference to future persecution, but it had to do with the MS-13 identification issue. Is that correct? That's correct. All right. So your basic argument is if it gets remanded, then that issue has to be dealt with, and who knows what the evidence is going to be. I think our argument is that it could be remanded to deal with that issue. I also think... Yeah, I know. You don't want to give up your argument, but I take it that the father's family still is in Honduras. He had some brothers and sisters. That's correct, and in fact, as part of the gang claim, what we point out is that his father's family, they're members of a rival gang to MS-13. A specific cousin, I believe, is mentioned in the record, and that's part of our client's fear about going back to Honduras. Okay. Thank you. Okay. May it please the court. My name is Jennifer Singer, and I represent the United States Attorney General, the respondent in this matter. This case presents several issues, and in the government's view, the petitioner cannot prevail on any of them. With regard to nexus number one, the petitioner cites several areas in the record where he believes that the evidence shows that there's a nexus between the abuse the petitioner suffered and a protected ground, namely that of his family. I just don't believe that that evidence is compelling evidence. Counselor, let me stop you there. There are two different arguments being made. The first is not that the record compels a nexus finding, although he certainly argued that today, but that the board used the wrong analysis in affirming the lack of nexus finding, and that the board further erred in making the ruling it did about the necessity of corroborative evidence. So if you could focus on that aspect of it, that would be helpful. Okay. So I think the first issue goes to whether or not the agency did the mixed motive analysis. So I will start there. Whether the IJ did the mixed motive analysis. So I believe that he did. Under a mixed motive analysis, all that's necessary is for the immigration judge to look at the possibility of several motives, which it did here. It acknowledged petitioner's assertion that he was harmed because of animus to his family relationship. And then the immigration judge acknowledged that that was a possibility, but found that it was not a central reason for the harm he suffered. And under the mixed motive analysis, that is all that is required to see if a protected ground was a central reason for the harm. You said one central reason, the one central reason. The standard is whether or not a protected ground is a central reason for the harm. Right. So he said the central reason. I believe he said a central reason. Yes. And that analysis is sufficient for mixed motive analysis. The one central reason. I think he said one central reason, but the protected ground was not a central reason for the harm. And that would be sufficient for mixed motives. You know, that's not so clear. The Ninth Circuit has said the actual language is not a central reason. At least one central reason. And the Ninth Circuit has said we've not been so explicit. That does not mean better than 50 percent. It means something less than that. And here we have a finding that the petitioner was credible. His grandmother beat him, including during time periods when the grandfather wasn't around. And the only evidence as to the grandmother, which is also evidence as to the grandfather, is that she beat him and treat him the way she did because she hated his mother. He makes that statement as to both parents. They hated my mother. The I.J. does not look at the grandmother. He looks at the grandfather. And he says, oh, well, there are also statements that he wanted him, the petitioner, to be raised the way he was raised and to be raised as a man. So when one thinks about why they hated the mother, the most logical thing that comes to mind, although it's not explicit, is she kicked her abusive husband out of the house twice. First, his own sister told him he had to leave when he started beating his wife. And second, the wife told him he had to leave when he was beating his wife and his daughter. Okay, there's also evidence that in Honduras, this is part of being a man, beating your spouse, and that maybe grandfather was raised that way as well. In any event, there's nothing inconsistent between the they hated my mother for this possible reason and that's the way men are raised in Honduras. And they're posed as though they are alternatives. You, in your brief, say this is just sheer speculation, but even the BIA didn't say that. They said, yes, there is evidence. It's plausible. I think the discrepancy there is in the immigration judge's decision. The immigration judge did acknowledge the possibility of two harms. And I think the evidence that the immigration judge pointed to, taking the grandfather aside with regard to the grandmother... Why are we disregarding the grandmother? Why not? I'm just saying that the immigration judge... Just to follow up on Judge, it's really quite striking that you have one statement about the grandfather wanting to raise me as he had been raised, wanting me to be a male. One statement, then you have all of this other evidence that he offers as to why he was treated so badly, particularly by his grandmother, because she hated the mother's family. There's such a disproportion about all of the evidence there is on that point and the rather limited evidence there is on the other. And yet, just to finish, of course, you can answer. Then the IJ seizes upon that one statement and says, there's enough evidence to support that as a reason that he was being persecuted, but there's not enough on the other proposition. It's very hard to reconcile those two very different approaches. I don't think that there's so much evidence that you think there is regarding the grandmother's hatred. All the questions that petitioner was asked all started with, I believe my grandmother did this because she hated my mother. I believe I was harmed because my grandmother hated my mother. There's no objective evidence in the record to support that conclusion. Okay, where is that evidence going to come from? If you look to petitioner's declaration, so I think the IJ credited the grandfather's statement because he actually made that statement to the petitioner. There's no evidence of any actual statements by the grandmother that she hated the mother or that she was having petitioner because she hated the mother. There was no cross-examination by the government. There was no question. Well, she never said that, did she? You're just speculating. There was no cross-examination on that point. That's correct, but this court may look at all the evidence in the record. And that's precisely what we're doing, which leads us to the question of whether an appropriate analysis was actually done here. I mean, where else is he going to find evidence? Certain statements that were made. If you look at the petitioner's declaration, he states in his declaration. Counsel, I asked you a question. Where reasonably is he going to find additional evidence? It's just mere statements made either concurrent to the harm or right before the harm that you could infer that that was the reason for the harm. There's no statements that the grandmother makes. So it's his failure to say my grandmother stated to me that the reason was she hated my own mother. He was given that opportunity during his testimony. It wasn't examined on this. The government didn't seem to dispute this at all. I mean, his own counsel asked him questions of things that his grandmother said, and there was never testimony by petitioner that his mother stated that his grandmother stated that he hated his mother or that his grandmother stated that she was harming him because of hatred for the mother or the family. All the objective evidence shows that she punished him when he got his shirt dirty, and then she felt it was a burden to clean the shirt. It has nothing to do with the mother. And all the statements that the grandmother, actual statements that the grandmother made aside from the petitioner's own beliefs were, yes, they were mean. They said that your mother didn't love you. But those are just statements. They don't show animus or hatred to the family, and they're completely unconnected to any harm. But moving to the corroboration issue. I do agree with your point earlier where the immigration judge didn't seem to make a corroboration finding, just a weight of the evidence finding. The board did seem to make a corroboration finding. And either way, if this court were to find that the board's analysis on that was incorrect, it really doesn't matter anyway. It's irrelevant because absence, corroboration, petitioner's credible testimony is still not the declaration. In the government's view, it doesn't really add much to bolster the nexus finding. Okay. Could you get to Judge Lopez's point about future persecution? So his claim of future persecution is based upon a social group of, I believe, young Honduran men who are... No, no, no, no. Deal with the family relationship PSG. So I'm a little confused on that because based on the... If this court were to find a nexus and pass persecution based upon his membership in the family, is that what the court is asking? No. The IJ found persecution. We'll take that. Okay. BIA didn't upset that. IJ also found there was a particular social group. We'll take that. What the IJ said was there's an insufficient nexus here between the two and specifically refers to the grandfather. Okay. So one of the questions that has been raised during the oral argument is, okay, if that's an error, is there still a point to remanding it to the agency? Because in the end, future persecution issue has to be faced. So I would argue, yes, that the case would have to be remanded. The agency would have to be given an opportunity. Maybe the case would go to the board. The board would probably send it back to the immigration judge for a new hearing to allow the issue of whether the rebuttable presumption raises that and then whether it's been rebutted by the government. So evidence would have to come in on that. And then I would assume that given new case law, the IJ and the board would apply the remand into a few due process and ex post facto issues if you did that. Even if it was not applied, the most likely the IJ would find that the presumption of a well-founded fear based on the family would be rebutted because like the owner said earlier, the petitioner is an adult. He's a father of his own now. He likely wouldn't live with the grandparents again. It's unfair if they even are, if they're even still alive. I think you would acknowledge you're now speculating as to how it will play out. But I think you also just said that although that's your prediction, it still should be remanded. The agency should have the opportunity to address that in the first instance. Yes, your honor. Okay. In regard to the other issue of well-founded fear based upon a social group of perceived gang members, the agency got it right there too. Based on the matter of EAG in this court's decision in Candelaro, the policy considerations come against constituting that as a particular social group and forming a separate social distinction finding that the particular social group... Why would we, just on your scenario, if we were to find errors with respect to the handling of past persecution, it's got to go back so that now the future persecution issue should be addressed. Why should we address those somewhat difficult social group issues? What would be the point of our doing that now? The government believes that all those other issues can be, the board's decision can be affirmed on all those grounds except to the extent that this court wanted to disagree. You're missing the point. Isn't the point that if there's, if there are other errors, they need to be dealt with on remand and so we should decide whether there are other errors or not. And if there aren't, then the remand gets limited in scope. Yes, I agree with that. I'm just arguing that I don't believe there's other, I mean, this court has expressed concern about the nexus and the collaboration finding, but in terms of the other particular social group findings, I don't think there's any error in any of those findings. So I don't think remand on that basis would be necessary, is my argument. Okay. So you're asking us to deny the petition as to all of the other social groups, even were we to rule against you on the family social group? That's correct. Okay. Thank you. If there's any further questions, thank you, Your Honors. Thank you, Your Honors. If I could just address a couple of quick points. In terms of statements from the grandmother regarding her animus toward our client's mother, I would just direct the court to pages three and four of our reply brief. I think we lay out many of the instances in which our client spoke about that animus and about the abuse, and he talks often in terms of both grandparents simultaneously about the grandfather individually and then also about his grandmother individually. No, her point is he didn't quote the grandmother. He just said, I believe this is what her motivation is. Did he ever quote the grandmother? So in our client's declaration, so first off, I'm not sure that it's necessary for him to have quoted the grandmother. I'm not aware of any case where that supports that specific proposition. But then in his affidavit, he does talk about the fact that his grandmother often told him that his mother left Honduras because she did not love him. And I just would like to make one related point, which is the abuse that our client suffered was not simply the physical abuse, but also the emotional abuse of which statements like that are directly relevant. And then one final point about the gang-related PSG, it's obviously, if the court were to find errors on the nexus holding and then remand for further proceedings on that, we think that presents a distinct basis, a separate basis for his asylum claim. What is the legal error there? Is it that, I think what you're arguing is that there was a conflation, if you will, between perception of gang membership and actual gang membership and that conflation by the BIA is a legal error? Is that your argument? That's correct. But I would just take it one step further and say it's not merely just the perception of gang membership. It's actually the label of gang membership by U.S. law enforcement, which is, I think, a little bit more direct than what the board is dealing with in a matter of EAG. And then also, there's another legal error related to the board's finding that our client would only be subject to, quote, lawful monitoring, which was the board's own factual finding, not a finding by the immigration judge. Does it matter on the perception of gang membership that there doesn't seem to be any evidence in this record that in Honduras, individuals who are perceived to be gang members are a distinct group recognized socially? I mean, I don't know if there's any evidence on that at all. And so I think what there is evidence of and what the board's precedents point to is the imputed membership in a group or a wrong perception in a group. What you look to is you look to that specific group and whether that specific group would be socially visible. So for example, in a matter of EAG, the board first makes a finding and it says, well, gang members might be a socially distinct group within, I believe it was within Honduras. But then what about to say we reject that social group because perceived gang membership cannot be a social group because we would not allow gang members to form a particular social group because of the policy reasons stated. Okay, you've gone beyond your time. Ms. Singer, do you want to say anything on that last point which your brother just raised on rebuttal about the labeling of him as a gang member and whether it is there is evidence in Honduras that it would be recognized as a distinct social group? The first is I think that's a distinction without a difference and there's no evidence that either mislabeled gang members or misperceived gang members are a distinct social group within Honduran society and I would also like to add that the issue of whether a group is socially distinct is from the view of the society in general and not the persecutors and I think that argument goes to whether a potential persecutor would view them as a member of a social group rather than society as a whole. Okay, thank you. Thank you all.